a

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

DERRICK EDWARDS,          CIVIL ACTION NO. 5:18-CV-1007-P
Petitioner

VERSUS                    JUDGE S. MAURICE HICKS, JR.

DARREL VANNOY,        MAGISTRATE JUDGE PEREZ-MONTES
Respondent

---

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2254 by *pro se* Petitioner Derrick Edwards ("Edwards") (#621889). ECF No. 1. Edwards is an inmate in the custody of the Louisiana Department of Corrections ("DOC"), incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Edwards challenges his 2014 conviction and sentence imposed in the First Judicial District Court, Caddo Parish, Louisiana.

Because Edwards has not carried his burden of proving entitlement to habeas relief, his Petition (ECF No. 1) should be DENIED and DISMISSED WITH PREJUDICE.

## I.   Background

Edwards was indicted by a grand jury for one count of second-degree murder, in violation of La. R.S. 14:30.1, for the death of Tyrone Miles ("Miles"). ECF No. 11-3 at 13.

According to the Louisiana Second Circuit Court of Appeal:

Derrick Edwards and Patricia Cathron Edwards are the parents of Shanderricka Edwards. When Shanderricka was three years old, her father abandoned her and had little to do with her for the next 14 years. On June 4, 2011, Shanderricka was 17 years of age. She lived in Shreveport in a duplex with her mother.

Tomika Adams, age 30, resided in the upstairs apartment of the duplex. In the preceding few months, both Tomika and Shanderricka had been involved with 27–year–old Tyrone Miles, a point of contention between the two women.

Katrina Brown lived two houses from the duplex. Diane Priest lived in a house next to Katrina, three houses from the duplex. Tomika's mother, Everlerna Adams, lived across the street diagonally. The defendant was a very personal friend with Lavonne Bell, who resided nearby.

## I. The Initial Argument

In the early afternoon of June 4, 2011, Shanderricka and Tomika argued about:

- a DVD player that Everlerna had loaned to Shanderricka; and
- Shanderricka's belief that Miles had gone back with Tomika.

Diane observed the argument from her front porch, testifying that its duration was about a half hour. Lavonne testified that Tomika refused to fight Shanderricka. The police were called and both women were handcuffed, but not arrested. Lavonne called the defendant to tell him that his daughter had been involved in an argument and was in handcuffs.

The defendant arrived and spoke with the officers. He and Shanderricka discussed the argument, but were not angry with each other at that time.

## II. The Argument Between Shanderricka's Parents

The defendant and Patricia argued about his disapproval of the relationship between Shanderricka and Miles. Patricia and Shanderricka returned to the duplex. Miles later joined them. The defendant remained in the street, still angry. He asked Lavonne and Tomika to take his truck and go purchase beer. They did so.

After they left, the defendant was in the street in front of the Browns' house, talking to a crowd of people, including Diane.  Lavonne testified that when she left, the defendant was not angry or upset.

## III. The Father–Daughter Fight

Shanderricka and her young sister walked by the group of people, when she heard her father saying that he was going to have Lavonne fight Patricia.[1]  Shanderricka told him that he couldn't "do that" but that he could "whoop" her.  Shanderricka asked her father why he was talking about their family business in public.  Shanderricka later said that he must have thought she was disrespectful.

Shanderricka was holding her two-or three-year-old sister when the argument began.  She put the child down and Katrina picked up the child.  Shanderricka and her father began physically fighting.  The defendant, age 37, grabbed his daughter, age 17, by her throat and began hitting her in the face with his fists.  Shanderricka fought back, but the defendant pulled her to the ground by her hairpiece.

Patricia swung her crutch at the defendant, but missed.  After the fight, Miles helped Shanderricka and Patricia up, and walked them back to the duplex.

Shanderricka identified photographs showing scratches on her neck and bruises on her face.

Everlerna testified that she saw the defendant hit his daughter, but said the marks on Shanderricka's face and neck were caused by Patricia's crutch.

## IV. Invitation to a Killing

After the fight, the defendant followed Miles, Shanderricka, and Patricia down the street, challenging anyone to "come out to the street and get it."

Shanderricka testified that:

- her father told Miles that he would "bust his butt";
- she told Miles not to worry about her father;
- her father continued to taunt and provoke Miles;

---

[1] Patricia, the mother of Shanderricka, was an amputee.

3

- she tried to restrain Miles, but he broke away and went into the street;
- it was dark, with minimal to no street lights working;
- Miles, age 27, and the defendant began fist-fighting;[2]
- the fight lasted two to three minutes;
- she never saw Miles with a weapon;
- her father normally carried a pocket knife in his pants pocket; and
- she never saw the defendant stab Miles, though she saw Miles step backward and say, "Man, you stabbed me."

No one testified as to seeing the knife during the fight. Patricia saw Miles stagger into her front yard, but did not know that he had been stabbed until he collapsed on the floor of the duplex.
Diane heard someone say, "he didn't have to stab him."

Shanderricka further testified that:

- Miles ran toward the duplex as the defendant remained in the street, yelling;
- Miles left a bloody handprint on the door of a vehicle parked in the yard;
- he entered the duplex and fell to the floor with blood pouring from his side;
- the photograph of the blood inside the doorway was accurate; and
- she called 911, but Miles lost consciousness before EMS arrived.

The defendant also called 911, reporting that he stabbed Miles. Lavonne said the defendant could have come to her home instead of fighting.

## V. The Investigation

**Corporal Jennie Taylor,** of the Shreveport Police Department, who was the first officer to arrive at the scene, testified that:

- as she exited her unit, the defendant blurted out that he had stabbed Miles;
- she detained the defendant in her vehicle;
- she made contact with Miles and assisted with crowd control;
- she asked the defendant for the knife and he gave it to her;
- the knife was later turned over to a crime scene investigator; and
- the knife shown her in court was the one received from the defendant.

---

[2] Katrina and Patricia also witnessed Miles walk into the street and fight with the defendant. Patricia saw the men swinging at each other in a side-to-side motion.

4

**Sergeant Danny Duddy,** supervisor of the Shreveport Police Department crime scene unit, was the on-call crime scene investigator on June 4, 2011. Duddy identified photographs that he took of the crime scene and the participants. He received an open pocketknife from Corporal Taylor.

**Dr. Long Jin,** a forensic pathologist at LSU Health Sciences Center, conducted an autopsy the next day, with these findings:

- cause of death was determined to be two sharp force wounds to the chest;
- manner of death was determined to be homicide;
- one wound was a stab wound, located slightly to the left of the middle chest;
- that wound penetrated the right ventricle of the heart;
- the right ventricle is easily penetrated by a two-inch deep jab with a knife;
- the second wound was also a stab wound to the heart;
- both wounds were administered with a knife or sharp object;
- either wound would have been fatal;
- Miles bled to death as a result of his wounds;
- it would have taken a few minutes for Miles to die from his wounds;
- there was a possible defensive wound on the right elbow; and
- there was a slash wound to the right chest.

Trial started on January 28, 2014. The jury's verdict came two days later.

No post-trial motions were filed.

*State v. Edwards*, 49,635 (La.App. 2 Cir. 2/26/15); 162 So.3d 512, 514, *writ denied*, 2015-0628 (La. 2/5/16); 186 So.3d 1163.

Edwards was convicted as charged, and he was sentenced to life imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence. *Id.*

On appeal, Edwards presented two assignments of error: (1) improper use of grand jury testimony; and (2) insufficient evidence. *Id.* The conviction and sentence

were affirmed.  *Id.*   Edwards asserted the same two errors in a writ application to the Louisiana Supreme Court, and the application was denied.  *Id.*

Edwards timely filed an application for post-conviction relief alleging the following errors: (1) denial of his right to testify; (2) violation of due process in providing an erroneous jury instruction regarding the burden of proof; (3) ineffective assistance of counsel in failing to preserve Edwards's right to testify and failing to object to the judge's erroneous jury instruction; and (4) cumulative error.  ECF No. 11-6 at 47-72.  The trial court denied relief.  ECF No. 11-6 at 153-4.  The Louisiana Second Circuit Court of Appeal denied Edwards's writ application on the showing made.  ECF No. 11-6 at 209.  The Louisiana Supreme Court also denied writs.  *State ex rel. Edwards v. State*, 2017-0232 (La. 4/20/18); 240 So.3d 916.

In his timely-filed § 2254 Petition, Edwards asserts six claims for relief: (1) insufficient evidence; (2) improper use of grand jury testimony; (3) denial of the right to testify; (4) erroneous jury instruction regarding the burden of proof; (5) ineffective assistance of counsel by failing to preserve Edwards's right to testify and failing to object to the judge's erroneous jury instruction; and (6) cumulative error.  ECF No. 1 at 3-15; ECF No. 1-2 at 16-42.

II.    **Law and Analysis**

A.    **The Rule 8(a) Resolution standard is applicable.**

The Court is able to resolve this Petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact relevant to the Edwards's claims, and the state court records provide the required and adequate

factual basis. *See Moya v. Estelle*, 696 F.2d 329, 332-33 (5th Cir. 1983); *Easter v. Estelle*, 609 F.2d 756, 761 (5th Cir. 1980); Rules Governing Section 2254 Cases, Rule 8(a).

**B.    The standard of review is deferential.**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a federal court may not grant habeas relief unless the state court judgment rejecting the petitioner's claims: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *North v. Davis*, 18-10306, 2020 WL 370034, at *1 (5th Cir. Jan. 22, 2020) (citing 28 U.S.C. § 2254(d)(1)–(2)).

The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to conduct a de novo review of factual findings and substitute its own opinions for the determinations made by the trial judge. *See Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)).

Section 2254(d) demands an initial inquiry into whether a prisoner's claim has been "adjudicated on the merits" in state court; if it has, the AEDPA's highly deferential standards apply. *See Davis*, 135 S. Ct. at 2198 (citing *Richter*, 562 U.S. at 103)).

A state court decision is "contrary to" clearly established United States Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. *See Martin v. Cain*, 246 F.3d 471, 476 (5th Cir. 2001); *see also Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007), *cert. den.*, 555 U.S. 827 (2008).

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. *See Martin*, 246 F.3d at 476. An unreasonable application is different from an incorrect one. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). Also, if a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable. *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *see also Davis*, 135 S. Ct. at 2199 (citing *Fry v. Pliler*, 551 U.S. 112, 119 (2007)).

## C.    Edwards cannot establish insufficient evidence.

Citing *Jackson v. Virginia*, 443 U.S. 307 (1979), Edwards claims that the evidence was insufficient to convict him of second-degree murder.  ECF No. 1-2 at 16. Edwards argues that the State did not satisfy its burden of proving the charged offense or proving that the homicide was not committed in self-defense.  ECF No. 1-2 at 17.  Edwards argues the State failed to present any witness to the stabbing or any witness that could contradict Edwards's self-defense claim.  ECF No. 1-2 at 19-20.

Edwards's sufficiency of the evidence claim was adjudicated on the merits by the state courts on direct review.  *State v. Edwards*, 49,635 (La.App. 2 Cir. 2/26/15); 162 So.3d 512, 516, *writ denied*, 2015-0628 (La. 2/5/16); 186 So.3d 1163.  Therefore, Edwards must show that the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Edwards can establish neither.

The applicable clearly-established federal law for a sufficiency of the evidence claim is set forth in *Jackson*, which directs the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319.  A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence are all

entitled to a great deal of deference by a reviewing court. *See Marshall v. Lonberger*, 459 U.S. 422, 433-35 (1983); *Jackson*, 443 U.S. at 319.

Moreover, when a state court has denied a sufficiency of the evidence claim on the merits, the habeas court's review must be doubly deferential, meaning that the state court determination may not be overturned unless it was an objectively unreasonable application of the deferential *Jackson* standard. *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Harrell v. Cain*, 595 F. App'x 439 (5th Cir. 2015). Thus, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

The federal court must look to the substantive elements of the offense under state law when applying the *Jackson* standard. *See Norris v. Dretke*, 826 F.3d 821, 833 (5th Cir. 2016), *cert. denied*, 137 S.Ct. 1203 (2017). Under Louisiana law, second-degree murder includes "the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1(A)(1). "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1); *State v. Lindsey*, 543 So.2d 886 (La. 1989), *cert. den.*, 494 U.S. 1074 (1990); *State v. Davies*, 35783 (La. App. 2 Cir. 4/5/02), 813 So.2d 1262, *writ. den.*, 2002-1564 (La. 2003), 843 So.2d 389. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant.

*See State v. Draughn*, 2005-1825 (La. 2007), 950 So.2d 583, *cert. den.*, 552 U.S. 1012 (2007).

The Louisiana Court of Appeal for the Second Circuit considered and rejected Edwards's arguments that the State did not prove he had the specific intent to kill the victim; that the state failed to produce a witness who saw him stab the victim; that he acted in self-defense, having no means of retreat from the aggressor; and that the facts would sustain a manslaughter conviction, at most. *State v. Edwards*, 162 So.3d at 517.   The appellate court found that the record provides "overwhelming evidence of the stabbing, including a confession from the defendant and a dying declaration from the victim." *Id.* at 518.

The Second Circuit found that Edwards's actions prove he had the specific intent "to kill or inflict great bodily harm" required under La. R.S. 14:30.1(A)(1). *Id.* at 519.   The court found that the altercation began as a fist fight, and that Edwards elevated the fight with the use of a weapon. *Id.* at 519.   It stated that no evidence was presented to establish Edwards reasonably believed he was in immediate danger of losing his life, or that killing the victim was necessary to save his own life. *Id.*   The Second Circuit noted that a defense witness confirmed Edwards could have retreated to her house. *Id.*   It also noted that the evidence showed Edwards was the aggressor, and it pointed out an absence of evidence that Edwards attempted to withdraw from the situation prior to using deadly force. *Id.*   The Second Circuit held that a trier of fact could have found, beyond a reasonable doubt, that the act was not committed in

self-defense, and that the essential elements of the crime of second-degree murder were proven. *Id.*

At trial, Edwards offered nothing to substantiate his claim that he told the officers he stabbed Miles in self-defense. Corporal Jennie Taylor ("Corporal Taylor") of the Shreveport Police Department testified that Edwards approached her vehicle when she arrived on scene. He said that he had been in a fight and stabbed the victim ECF No. 11-4 at 174, 180. After she checked on Miles, Corporal Taylor went back to Edwards, who gave her the pocketknife used to kill Miles. *Id.* at 175. Corporal Taylor did not testify that Edwards claimed he acted in self-defense.

Edwards's daughter, Shanderricka Edwards ("Shanderricka"), and her mother, Patricia Cathron ("Cathron"), testified that Miles helped them after their encounter with Edwards, prior to the fight between Miles and Edwards. *Id.* at 94-95, 153-55. Miles was walking back to their house, but responded to Edwards "nagging at him to come fight." *Id.* at 157. Miles went back to meet Edwards in the street where the fight ensued. *Id.* at 106-108, 155-567.

Shanderricka testified that she did not see Miles with a weapon, and that Edwards usually carried a pocketknife. *Id.* at 108. Shanderricka testified that, although she didn't see the stabbing, Miles and Edwards were fighting, and Miles walked away from the fight "clutching his chest" and bleeding. *Id.* at 109. According to Shanderricka, Miles "hit the floor" bleeding and said: "He stabbed me." *Id.* at 110.

Cathron also testified that she did not see Miles with a weapon. *Id.* at 157. She saw Miles run from Edwards, "staggering," and he "collapsed on the floor" of her house. *Id.*

Diane Priest ("Priest") testified for Edwards, stating that she never saw Edwards with a knife. ECF No. 11-5 at 24-25. Priest also testified that Edwards grabbed Shanderricka, pulled her to the ground, and laid on top of her to hold her down. *Id.* at 33. Priest testified that Edwards was "beating his daughter like a man." *Id.* Priest saw Edwards hand the knife to the police after the fight, and she heard Edwards say that he stabbed "the man." *Id.* at 38-39.

Another defense witness, Everlerna Adams ("Adams"), testified that she did not see Edwards with a knife. *Id.* at 100-01.

The testimony indicates that Edwards could have withdrawn from the conflict when Miles walked Shanderricka back to her mother's house. ECF No. 11-4 at 106-108, 155-167. Thus, a rational trier of fact could have found the essential elements of second-degree murder were proven beyond a reasonable doubt. There is sufficient evidence to support Edwards's conviction of second-degree murder.

Edwards cannot establish that the Second Circuit's adjudication was contrary to or involved an unreasonable application of *Jackson*, or that it made an unreasonable determination of the facts in light of the evidence presented at trial.

### D.    Edwards's claim regarding the grand jury testimony is procedurally defaulted.

Edwards asserts that the trial court erred by failing to order a mistrial after the State used a grand jury transcript without laying the proper foundation or

without an *in camera* review by the court.  ECF No. 1-2 at 20.  Edwards presented this claim on appeal.  ECF Nos. 11-5 at 201; 11-6 at 14.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).

In his appeal, Edwards only raised the violation of Louisiana Code of Criminal Procedure article 434; he did not present a federal claim.  ECF Nos. 11-5 at 201; 11-6 at 14.  Because Edwards did not raise the federal nature of the claim in the state courts, the claim is unexhausted.  *See Baldwin v. Reese*, 541 U.S. 27, 29-33 (2004); *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001).

If Edwards now attempted to present a federal claim regarding the purported violation in state court, the claim would be procedurally barred as untimely or repetitive.  *See*  La. C. Cr. P. arts. 930.8, 930.4.  Because Louisiana law would preclude review of Edwards's claim, there is an independent and adequate state procedural ground to prevent federal review.  *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).  Thus, Edwards's claim is now procedurally defaulted.

14

### E.   Edwards cannot establish the denial of his right to testify.

Edwards complains that he was denied the right to testify in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Edwards presented this claim to the state courts on post-conviction review, and relief was denied.  ECF No. 11-6 at 58-64, 167-73, 223-30, 238-40, 269.  The Louisiana Supreme Court held that Edwards failed to satisfy his post-conviction burden of proof under La.C.Cr.P. art. 930.2.  *Id.* at 269.  Because the claim was adjudicated on the merits by the highest state court, Edwards must satisfy the showing required by §2254(d).

The right to testify stems from the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment, as well as the Fifth Amendment privilege against self-incrimination.  *See Rock v. Arkansas*, 483 U.S. 44, 51 (1987).  "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so."  *Harris v. New York*, 401 U.S. 222, 225 (1971).  "This right is personal to the defendant: only he, not counsel, may make the choice."  *United States v. Rodriguez-Aparicio*, 888 F.3d 189, 193 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 592 (2018) (citing *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002)).

A habeas petitioner has the burden of proving that he was denied this constitutional right, and it is not enough to merely state that he told his trial attorney that he wanted to testify but his attorney forbade him from doing so.  *See Murray v. Cain*, 15-CV-0827, 2019 WL 1417442, at *6 (M.D. La. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1412932 (M.D. La. Mar. 28, 2019) (citing *Reed v.*

*Cain*, 13-CV-0037, 2014 WL 2050613, *9-10 (E.D. La. Sept. 2, 2014); *Turcios v. Dretke*, 97-CV-0515, 2005 WL 3263918, *6 (S.D. Tex. Nov. 29, 2005); *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)).

In *Underwood* the United States Court of Appeals for the Seventh Circuit specifically noted the potential problem posed if a habeas petitioner, arguing that counsel unconstitutionally denied him his right to testify, is not required to satisfy his burden of proof. *See Mosley v. Cain*, 06-CV-6259, 2009 WL 2982930, at *4 (E.D. La. Sept. 14, 2009) (citing *Underwood* 939 F2d at 475-75).

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." That's what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me I could not testify."

> We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), that this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify-to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Id.*

There is no evidence to support Edwards's claim. Edwards only offers his conclusory statement that counsel denied him his constitutional right to testify at trial. "Standing alone, such self-serving statements cannot be allowed to succeed or the criminal judicial process would become unworkable." *Turcios v. Dretke*, 97-CV-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood*, 939 F.2d at 475–76).

Edwards points to an absence in the record of a waiver of his right to testify. ECF No. 1-2 at 30. "As the Courts have recognized, albeit in other contexts, 'the absence of evidence does not equal evidence of absence.'" *Bolivar v. Davis*, 1:18-CV-139, 2019 WL 7593279, at *8 (S.D. Tex. Oct. 23, 2019), *report and recommendation adopted*, 2020 WL 242425 (S.D. Tex. Jan. 16, 2020) (quoting *Johnson v. PPI Tech. Servs., L.P.*, 613 F. App'x 309, 312 (5th Cir. 2015). The fact that the record is silent about Edwards's "lack of testimony is not conclusive — or even implicit — proof that he was denied his constitutional right to testify." *Id.* The record is similarly devoid of any evidence that Edwards wished to testify and was prevented by his attorney from doing so. *See id.*

The state courts made a factual finding that Edwards did not establish sufficient facts to demonstrate that his rights were violated. This Court must presume that the state court's factual findings were correct. 28 U.S.C. § 2254(e)(1). Edwards cannot overcome that presumption. The record does not indicate that Edwards was prevented from testifying, or that his alleged desire to testify was rebuffed by his counsel or the trial court.

**F.** <u>**Edwards cannot establish a constitutional violation regarding the jury instruction on manslaughter.**</u>

Edwards alleges that the trial court gave an improper jury instruction on manslaughter that placed the burden of proof on Edwards. ECF No. 1-2 at 31. Specifically, Edwards complains that his constitutional rights were violated when the trial judge instructed the jury: "The defendant bears the burden to prove, by a preponderance of the evidence, that he acted in 'sudden passion or heat of blood' in order for a verdict of manslaughter to be appropriate." *Id.* Edwards presented this claim to the state courts on post-conviction review. ECF No. 11-6 at 64, 164, 256. The Louisiana Supreme Court held that Edwards failed to satisfy the burden of proof as required by law. ECF No. 11-6 at 169.

Edwards cannot show that the instruction was erroneous. As the Louisiana Second Circuit Court of Appeal noted on direct review: "In its charge, the trial court correctly advised the jury as to the law applicable to this case, including: (1) the required elements to proved [sic] the charged crime and any responsive verdicts; (2) the law of specific intent; (3) self-defense; and (4) the aggressor doctrine." *State v. Edwards*, 49,635 (La. App. 2 Cir. 2/26/15); 162 So.3d 512, 516 n.3, *writ denied*, 2015-0628 (La. 2/5/16); 186 So.3d 1163.

Manslaughter is a responsive verdict to second-degree murder. *See* La. Code Crim. P. art. 814(A)(3). According to the Louisiana Supreme Court:

> Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La.R.S. 14:31(1). Thus, the presence of "sudden passion" or "heat of blood" distinguishes

18

> manslaughter from murder. The court has stated on several occasions, however, that "sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. *State v. Tompkins*, 403 So.2d 644 (La.1981); *State v. Temple*, 394 So.2d 259 (La. 1981); *State v. Peterson*, 290 So.2d 307 (La. 1974). Since they are mitigatory factors, a defendant who establishes by a preponderance of the evidence that he acted in a "sudden passion" or "heat of blood" is entitled to a manslaughter verdict. Where such proof has been introduced, a second degree murder verdict is inappropriate.

*State v. Lombard*, 486 So.2d 106, 110-11 (La. 1986) (footnotes omitted). Thus, it is the defendant's burden to prove by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" for a verdict of manslaughter to be appropriate where second-degree murder is charged. *See Lewis v. Rader*, CIV.A. 11-2665, 2012 WL 2280093, at *9 (E.D. La. Apr. 18, 2012), *report and recommendation adopted*, 11-CV-2665, 2012 WL 2280097 (E.D. La. June 18, 2012) (citing *State v. Robinson*, 754 So.2d 311 (La. App. 2d Cir. 2000).

Because the trial court correctly instructed the jury regarding Edwards's obligation to show "sudden passion" or "heat of blood," Edwards cannot establish that the state court's denial of his claim was unreasonable or contrary to any established federal law. 28 U.S.C. § 2254(d).

G. **Edwards cannot establish ineffective assistance of counsel.**

Edwards contends that he was denied effective assistance of counsel because his attorney did not call Edwards to testify and because he failed to object to the manslaughter jury instruction. ECF No. 1-2 at 33. Edwards exhausted the ineffective claim on post-conviction review. ECF No. 11-6 at 55, 165, 221. The trial

court found that Edwards's claim was meritless. *Id.* at 238-39. The court of appeal denied the writ on the showing made. *Id.* at 240. The Louisiana Supreme Court held that Edwards did not show ineffective assistance. *Id.* at 269.

The standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1983), applies to claims alleging an attorney's interference with the right to testify. *United States v. Willis*, 273 F.3d 592, 598 (5th 2001) (citing *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001)). An ineffective assistance of counsel claim requires a showing that: (1) counsel's performance was legally deficient; and (2) the deficiency prejudiced the defense. *United States v. Bernard*, 762 F.3d 467, 471 (5th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

"As to the first prong, the proper standard for evaluating counsel's performance is that of reasonably effective assistance, considering all of the circumstances existing as of the time of counsel's conduct." *Bernard,* 762 F.3d at 471. Deficient performance is that which falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This standard is highly deferential. "Recognizing the 'temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence,'" the Supreme Court has cautioned that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bernard*, 762 F.3d at 471 (quoting *Strickland*, 466 U.S. at 690).

Because the state courts denied the claim on the merits, the combined standards of review under *Strickland* and § 2254(d) are "doubly deferential."

*Pinholster*, 563 U.S. at 190.  Under § 2254(d), the Court must determine "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Harrington*, 562 U.S. at 105.

A bare and conclusory assertion of the denial of the right to testify by counsel is insufficient to establish ineffective assistance under *Strickland.  See United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (citing *Underwood*, 939 F.2d at 476).

Edwards argues that, if he had testified at trial like he did before the grand jury, he could have proven he acted in self-defense.  However, Edwards's argument is belied by the fact that his testimony before the grand jury resulted in an indictment for second-degree murder.  Thus, Edwards cannot establish that his testimony would have helped his case, or that his attorney violated his constitutional rights by not calling Edwards to testify.   Edwards cannot show that the state courts' rulings regarding his attorney's strategy were objectively unreasonable.

Likewise, Edwards cannot establish a violation as to his attorney's failure to object to the manslaughter jury instruction.  The trial court correctly instructed the jury regarding Edwards's obligation to show "sudden passion" or "heat of blood."  *See Lombard*, 486 So.2d at 110-11.  "Failure to raise a meritless objection is not ineffective lawyering; it is the very opposite."  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994), *cert. denied*, 513 U.S. 966 (1994).

Edwards complains that trial counsel also rendered ineffective assistance by not calling other witnesses on his behalf to support his self-defense claim. "[C]omplaints of uncalled witnesses are not favored in federal habeas review because

allegations of what the witness would have testified are largely speculative." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Edwards cannot establish that the state court's denial of his claim was contrary to or an unreasonable application of any established federal law. 28 U.S.C. § 2254(d).

### H.    Edwards cannot establish cumulative error.

Edwards claims the cumulative effect of the errors raised denied him of a fundamentally fair adversarial proceeding and effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments. ECF No. 1-2 at 39-40. Edwards presented this claim on post-conviction review. ECF No. 11-6 at 70, 180, 221.

Cumulative error on federal habeas review is a narrow and rare form of due process violation. *See Derden v. McNeel*, 978 F.2d 1453, 1461 (5th Cir. 1992) (*en banc*). The petitioner must show that: (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." *Id.* (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). A habeas petitioner may not just complain of unfavorable rulings or events in an effort to cumulate errors. *See id.*

Edwards has not established individual errors of constitutional dimension, so a cumulative error analysis is not warranted.

### III.    Conclusion

Because Edward's claim regarding the introduction of grand jury testimony is procedurally defaulted, and the remaining claims are without merit, IT IS RECOMMENDED that Edwards's Petition (ECF No. 1) be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be

taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this  14th  day of February 2020.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE